Marshall, C. J.
This is an error proceeding from the court of appeals of Highland county, in *551 which court it was tried as an original suit in mandamus to compel the county auditor of Highland county to issue to relators a warrant in the sum of $574.22, which amount was claimed as due to the Leesburg-Highland Agricultural Company, under the provisions of Section 9880-1, General Code. It was claimed that the company is an independent agricultural society, having more than thirty members, formed for the purpose of holding annual agricultural fairs, and that the society did in fact hold an annual fair in the year 1914, and annually thereafter. A fair was held in the month of August, 1918, and the state board of agriculture issued an order on the auditor and treasurer of Highland county for the financial aid due at the rate of two cents for each inhabitant of the county, as provided by Sections 9880 and 9880-1, General Code, as amended May 5, 1915. It is not denied that the fairs were held and that all formal requirements were complied with, but liability is denied on the ground that the company is not an independent agricultural society within the meaning of those sections, for the reason that it was originally organized as a corporation for profit under Ohio laws. The record discloses that the company was so organized through mistake and inadvertence and that when the mistake was discovered it was sought to be corrected, and that no profits have ever been distributed to the members. The rules and regulations prescribed by the state board of agriculture covering independent societies have been complied with.
Upon hearing in the court of appeals, that court denied the writ, but the order which was entered on the journal of that court discloses no findings of fact, nor is this court advised of the grounds upon which the court reached its conclusions.
*552 Section 9880-1, General Code (106 O. L., 273), omitting non-pertinent portions, is as follows: “When thirty or more persons, residents of a county * * * are organized into an independent agricultural society that has held annual fairs for agricultural advancement previous to January first, 1915, in a county wherein is located a county agricultural society, and when such independent society has held an annual exhibition in accordance with the three following sections, and made proper report to the state board, then, upon presentation to the county auditor of a certificate from the president of the state board attested by the secretary thereof, that the laws of Ohio and the rules of the board have been complied with, the county auditor of the county * * * shall draw an order on the treasurer of the county in favor of the president of the independent agricultural society for a sum equal to the amount paid to the county fair and the treasurer shall pay said order * *
The company held one fair prior to January 1, 1915, and held annual fairs thereafter, including the year 1918, and made proper report to the state board for that year, and received a certificate from the state board of compliance with the rules of that board.
An examination of the above-quoted section shows that nothing therein contained expressly forbids in terms the payment to a company on the ground that it was organized for profit, but this objection, if valid, must be upon the sole ground that if the section is so construed as to make the sums therein provided payable to a company organized for profit it would violate the provisions of Section 4, Article *553 VIII of the Ohio Constitution, forbidding that the credit of the state be loaned to any individual association or corporation, and would also violate Section 6, Article VIII, forbidding that any law be passed to raise money to aid any joint stock com-, pany, corporation, or association. It is feared by defendants in error that if this money is paid to this association it will be distributed as profits to. its members. The only ground for such fear seems to be the fact that the association was originally incorporated under Ohio laws, but a careful reading of the constitution and by-laws shows that it is in all respects similar to any regular county agricultural society and no provision is made for dividends or distribution of profits. By virtue of the provisions of Section 9885, General Code, it is clearly not necessary for either a county agricultural society or. an independent agricultural society to be organized under the general incorporation laws of the state, either for profit or not for profit. That section reads in part as follows: “County societies which have been, or may hereafter be organized, are declared bodies corporate and politic, and as such, shall be capable of suing and being sued * *
While that section by its terms applies to county societies, the section was enacted at a time when independent agricultural societies had not yet been provided for, and when independent societies were later provided for, with practically all of the attributes of county societies, all provisions of that chapter pertaining to county societies would automatically become applicable to independent societies. The record discloses that the original charter has long since been forfeited and that no other articles oí *554 incorporation were ever obtained, neither was it necessary to do so by reason of the provisions of Section 9885, above quoted. The status of the company must therefore be held to be the same as if it had never taken out the original articles of incorporation for profit.
On the other hand, if it be assumed that the company was at one time properly organized as a corporation for profit, and that it is therefore impossible to change its character, or if it be assumed that it is at the present time, as claimed by counsel for defendants in error, a de facto corporation for profit, it is difficult to find any statutory bar to its being given the aid provided for independent agricultural societies, so long as no profits have in fact been distributed to members and so long as there is no intention of making such distribution. The aid furnished to independent societies is no different in principle and given for no different reason than that furnished to county societies, and the only limitation upon the former which does not apply to the latter is that such fairs must have been held prior to January 1, 1915.
Section 9880-1, pertaining to independent societies, cannot be unconstitutional unless Section 9880, pertaining to county societies, is also invalid. The sections of the constitution above referred to forbidding financial aid, or the loan of the credit of the state, relate to private business enterprises, and, while they would forbid furnishing financial aid to any agricultural business, an agricultural fair is upon an entirely different basis, being a public institution designed for public instruction, the advancement of learning and the dissemination of useful *555 knowledge. Such fairs are the same type of institution as the farmer’s institute, aid for which is provided by Sections 9916 to 9921, General Code.
Courses of study in agriculture are being taught in many of the public schools of the state, and such courses are recognized as an important part of the curriculum. The manner in which the relators have proceeded is in harmony with Section 9880-1, General Code, and that section is not violative of the constitution. The judgment of the court of appeals must therefore be reversed and the cause remanded to that court for further proceedings in accordance with this opinion.

Judgment reversed.

Johnson, Hough, Wanamaker, Robinson and Matthias, JJ., concur.
Jones, J., dissents for the reason that this was a corporation for profit.